IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA BONE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-02984-JPM-dkv |
| | ) | |
| TACO BELL OF AMERICA, LLC a/k/a | ) | |
| TACO BELL c/o YUM! BRANDS, INC. | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Taco Bell of America, LLC ("Defendant"), by and through undersigned counsel of record, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits the following Memorandum of Law in Support of Defendant's Motion for Summary Judgment on the basis of judicial estoppel.[1]

**I.    BACKGROUND AND UNDISPUTED MATERIAL FACTS**

On July 18, 2007, Plaintiff Patricia Bone allegedly slipped and fell on a floor mat in a Taco Bell restaurant located at 8033 Highway 64, in Memphis, Tennessee. (SOF # 1.) Before filing a slip and fall lawsuit against Defendant Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy on December 7, 2007., Plaintiff and her husband filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court ("the 2007 Bankruptcy Case").  (*Id*. # 2.)

---

[1] Defendant is also filing a Motion for Order Requiring Plaintiff to Pay Costs of Prior Action and Motion for Stay of Proceedings pursuant to Fed. R. Civ. P. 41(d).

{02702463.DOC}1

On February 1, 2008, Plaintiff filed a Statement of Financial Affairs in the 2007 Bankruptcy Case. (*Id*. # 3.) The Statement of Financial Affairs, dated January 4, 2008, was executed by Plaintiff under oath. (*Id*. # 4) Plaintiff stated in the Statement of Financial Affairs that she was not a party to any lawsuit at the time. (*Id*. # 5.) Plaintiff also filed various other schedules with the Bankruptcy Court on February 1, 2008. (SOF # 6.) The information included in these schedules was also provided under oath. (*Id*. # 7.)

On "Schedule B - Personal Property," Plaintiff identified her claim against Defendant as a joint, contingent, unliquidated claim. (*Id*. # 8.) Plaintiff stated under oath in Schedule B that her claim against Defendant was worth zero dollars. (*Id*. # 9.) On "Schedule F – Creditors Holding Unsecured Nonpriority Claims," Plaintiff identified the medical providers who provided her treatment for the injuries that she allegedly sustained as a result of her slip-and-fall on July 18, 2008, and she itemized the value of each of these medical bills in her Schedule F filing. (*Id*. # 10.) Plaintiff never amended the Statement of Financial Affairs or the schedules she filed in the 2007 Bankruptcy Case to advise the bankruptcy court that she believed her claim against Defendant had value. (*Id.* # 11.)

On May 27, 2008, the Bankruptcy Court issued a Discharge of Debtor for the benefit of Plaintiff, but the bankruptcy case remained pending thereafter while the Court addressed additional issues between Plaintiff and her creditors. (SOF # 12.) The Discharge of Debtor from the Bankruptcy Court was mailed to Plaintiff's creditors, including to all medical providers listed in Schedule F. (*Id*. # 13.)

On July 18, 2008, Plaintiff initiated a lawsuit against Defendant in general sessions court, seeking a recovery up to the court's jurisdictional limits of $25,000. (the "2008 State Court Case"). (*Id*. # 14.) Plaintiff did not advise the Bankruptcy Court that she had initiated a lawsuit

and was now a party to a lawsuit, and she did not advise the Bankruptcy Court that she believed her claim did have value. (*Id*. # 11, 16.) The Bankruptcy Court issued its Final Decree/Order on September 23, 2008, which closed the 2007 Bankruptcy Court Case. (*Id*. # 17.) Two days after the Final Decree was entered by the Bankruptcy Court, Plaintiff submitted a settlement demand letter to Defendant, explaining why the claim she identified as having no value should be settled for $500,000. (*Id*. # 18.)

On October 17, 2008, Plaintiff allowed a defense verdict to be entered in General Sessions, and, on October 27, 2008, Plaintiff appealed the case to the Circuit Court where no jurisdictional limits on damages would apply to her case. (*Id*. # 19.) From this point forward, the 2008 State Court case advanced in Circuit Court under docket number CT-005380-08 until dismissed without prejudice on November 11, 2011. (*Id*. # 20). Plaintiff reasserted her lawsuit against Defendant on September 21, 2012 by filing a new Complaint with the Circuit Court that included a demand for $500,000 in damages. (*Id*. # 21, 22). Defendant timely removed this lawsuit to this Court.

The deposition testimony offered by Plaintiff and her husband during the 2008 State Court Case state shows that Plaintiff and her husband had decided to advance a legal claim for damages as early as the day after Plaintiff's fall. (*Id*. #27). In fact, within minutes of Plaintiff's fall on July 18, 2007, Plaintiff's husband, Leslie Bone, was directing persons with them in the restaurant to take pictures while Plaintiff was still on the floor of the restaurant. (*Id*. # 24). Leslie Bone testified that he had these photographs taken to support a claim against Taco Bell for damages. (*Id*. # 28). Several days after Plaintiff's fall, she and Leslie Bone returned to the restaurant to take additional pictures of the mat, which they also intended to support their lawsuit. (*Id*. # 26, 30, 32).

Plaintiff and her husband both testified that they had reason to believe that Taco Bell was legally liable for the fall within days of the incident. Leslie Bone testified that a fire fighter who responded at the scene stated that the mat on which Plaintiff fell should be removed in the interest of public safety. (*Id.* # 25). Furthermore, Plaintiff herself testified that she had served as a Taco Bell employee in the past, and she testified that the mat on which she tripped should not have been in use at the location where she fell. (*Id.* # 31). She furthermore testified that when she and her husband went back to the restaurant several days after her fall that Taco Bell had taken remedial steps and placed the proper mat in the area where she had fallen. (*Id.* # 32). Plaintiff unveiled all of this evidence for the first time in their settlement demand packet, which they submitted only two days after the Final Decree was entered by the Bankruptcy Court.

## II. SUMMARY JUDGMENT STANDARD

"Under Federal Rule of Civil Procedure 56, on motion of a party, the court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Coburn v. Cargill, Inc.*, No. 09-2844-JPM-dkv, 2012 WL 6607287, at *1 (W.D. Tenn. Dec. 18, 2012) (quoting Fed. R. Civ. P. 56(a)). "When confronted with a properly-supported motion for summary judgment, the nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Dickerson v. Federal Exp. Corp.*, 2:08-cv-02868-JPM-cgc, 2010 WL 8747316, at *2 (W.D. Tenn. Mar. 10, 2010) (quoting Fed. R. Civ. P. 56(e)). "A genuine issue of material fact exists for trial 'if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## III. ARGUMENT

Plaintiff Patricia Bone is judicially estopped from asserting and litigating this lawsuit against Defendant. The doctrine of "'judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.'" *Dickerson*, 2010 WL 8747316 at *2 (quoting *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002)). The "doctrine is 'utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning,* 283 F.3d at 775).

The "omission or nondisclosure of a cause of action as an asset in a bankruptcy schedule provides an appropriate basis for imposition of judicial estoppel." *Dickerson*, 2010 WL 8747316, at *2 (internal quotations and citations omitted). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court." *Id.* (internal quotations and citations omitted). Accordingly, "a debtor must amend his financial statements if circumstances change." *Id.* (internal quotations and citations omitted).

Pursuant to these standards, Plaintiff is judicially estopped from asserting and litigating her claim against Defendant. She is clearly asserting a position that is contrary to the position she previously asserted in the 2007 Bankruptcy Case where she denied being a party to any lawsuit and insisted that her claim had no value. The 2007 Bankruptcy Case was not yet closed when Plaintiff filed her lawsuit on July 18, 2008. (D.E. No. 1-2). She initially proceeded in General Sessions Court where the jurisdictional limits capped her recovery at up to $25,000. Plaintiff did

not file any amended schedules to advise the Bankruptcy Court that she now felt her claim had value.

It is very noteworthy that Plaintiff maintained the same position while her case was pending in General Sessions Court until the Bankruptcy Court entered its Final Decree/Order. The bankruptcy proceedings officially ended on September 23, 2008. Two days later Plaintiff unveiled the evidence she and her husband had developed back in July 2007 and made a settlement demand for $500,000. The settlement demand packet submitted by Plaintiff included photographs taken on the day of the incident and the days that followed. To justify her demand for damages, Plaintiff also itemized medical bills from providers that she had identified as creditors in her Chapter 7 Bankruptcy. The undisputed facts show that Plaintiff "sat on the evidence" that she intended to use to support her claim until after the Final Decree was entered by the Bankruptcy Court.

After the Final Decree was entered in the Bankruptcy Court, Plaintiff no longer intended on advancing her case to trial in General Sessions Court where her damages were limited to up to $25,000. On October 17, 2008, Plaintiff offered no evidence to oppose a defense verdict being entered in General Sessions, and, on October 27, 2008, Plaintiff appealed the case to Circuit Court where no cap on damages would apply. From this point forward, the case proceeded in Circuit Court until dismissed without prejudice on November 11, 2011. Plaintiff reasserted her lawsuit against Defendant on September 21, 2012 by filing a new Complaint with the Circuit Court that included a demand for $500,000 in damages. This lawsuit is currently pending with this Court, and the allegations asserted therein are directly inconsistent with those that Plaintiff made in her 2007 Bankrutpcy Case. The facts of record prove that Plaintiff provided misleading

information in her Bankruptcy filings so that she could secure relief in bankruptcy while preserving her the right to advance her lawsuit for her own personal gain.

The Sixth Circuit also has noted that "'judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence.'" *White*, 617 F.3d at 476 (quoting *Browning v. Levy,* 283 F.3d at 776). In determining mistake or inadvertence, the Court must consider whether Plaintiff lacked knowledge of the factual basis of her claim, whether she had a motive to conceal, and whether the evidence indicates the absence of bad faith. *White*, 617 F.3d at 478. With respect to the absence of bad faith, the Court must consider Plaintiff's efforts, if any, to advise the Bankruptcy Court of the information that was not properly disclosed. *Id.* The undisputed facts show Plaintiff did not make a mistake or inadvertently fail to disclose her lawsuit to the Bankruptcy Court. Instead, the time line of events shows that Plaintiff has attempted to engage in the very gamesmanship that the doctrine of judicial estoppel is intended to prevent.

The case law on point supports Defendant's argument that judicial estoppel is applicable. The court in *Dickerson* granted the defendant's summary judgment motion based on the doctrine of judicial estoppel, finding that the plaintiff's failure to disclose claims for discrimination and retaliation in his bankruptcy proceedings was not inadvertent. 2010 WL 8747316 at *4. The *Dickerson* plaintiff was not a party to pending lawsuits or administrative proceedings when he filed a Chapter 13 voluntary petition and, therefore, he did not list any claim on Schedule B or any suits or proceedings on his Statement of Financial Affairs. *Id*. at *1. Some months later, the Bankruptcy Court entered an order confirming his Chapter 13 plan. *Id*. Several years later, the plaintiff filed a charge of discrimination with the state human rights commission and, on September 26, 2008, he received a right to sue letter. *Id*. On November 21, 2008, the Bankruptcy

Court entered an order discharging the plaintiff after completing the Chapter 13 plan, and discharging the Trustee. *Id*. One month later, the plaintiff filed a complaint in the District Court, asserting discrimination and retaliation claims. *Id*. The plaintiff never amended his Schedule B or his Statement of Financial Affairs, or otherwise advised the Bankruptcy Court of his claims. *Id*. The defendant moved for dismissal based on judicial estoppel. *Id*. at *3. In response, the plaintiff contended that his failure to disclose was inadvertent. *See id*. The District Court disagreed, stating that the "[p]laintiff had knowledge of his employment discrimination claim against Defendant at the time he filed for bankruptcy; a motive to conceal the claim; and because [p]laintiff offered no evidence of any affirmative attempt to apprise the Bankruptcy Court prior to the closing of the Chapter 13 case." *Id.* at *4.

Similarly, in *White*, the Sixth Circuit Court of Appeals affirmed summary judgment for the defendants, concluding that the plaintiff was judicially estopped from bringing a claim that she had not adequately disclosed in initial bankruptcy filings. 617 F.3d at 473. The *White* court noted that the plaintiff had omitted the claim from her bankruptcy schedules and her Statement of Financial Affairs, which she had signed under penalty of perjury. *Id.* at 479. Although the plaintiff later made some effort to correct the omission, both prior to and after the filing of the defendants' motion, the Court stated that her limited and ineffective attempts to correct her initial misfiling were insufficient to avoid the application of judicial estoppel. *Id.* at 480. One particularly significant aspect of the inadequacy of the plaintiff's attempts to disclose was the fact that she never indicated the estimated value of her claim. *Id.* at 481-82. Moreover, she did not indicate whether she was the plaintiff or defendant, the facts giving rise to her claim, and when they took place. *Id.* Her limited disclosures "did not adequately inform the court, the

trustee, or [her] creditors of the initial omission and [did] not show the absence of bad faith or that [her] omission resulted from mistake or inadvertence." *Id.* at 481.

The holdings in *Dickerson* and *White* are applicable to the case at bar, and the facts presented to this Court show that Plaintiff acted in bad faith with a motive to conceal her claim's purported value[2] from the Bankruptcy Court and her creditors, namely, to shield any proceeds from her creditors, and, in fact, took affirmative steps to do so. There is no evidence that Plaintiff made any effort to inform the Bankruptcy Court, the Trustee, or her creditors of the value she assigned to her claim against Defendant. It, however, is clear that Plaintiff sat on the evidence she developed back in July 2007 until after the Final Decree was entered by the Bankruptcy Court. After she was free and clear of the Bankruptcy proceedings, Plaintiff unveiled her evidence to demand $500,000. In her bankruptcy, Plaintiff identified the very medical bills that she had discharged in her bankruptcy to justify her claim for damages. Defendant argues that this fact is evidence of gamesmanship and bad faith, which this Court should act to prevent. It is also clear that Plaintiff never informed the Bankruptcy Court that she had filed a lawsuit; accordingly, the Bankruptcy Court entered its Final Decree believing Plaintiff's claim had no value and that she was not a party to any lawsuit.

Defendant argues that this Court should apply the facts and law and reach the conclusion that this lawsuit should be dismissed on summary judgment. *See, e.g., White*, 617 F.3d at 476; *Lewis v. Weyerhaeuser Co.*, 141 F. App'x. 420, 428 (6th Cir. 2005) (affirming summary judgment where plaintiff acted intentionally and in bad faith where she began process of filing

---

[2] Plaintiff is not saved from summary judgment simply because she did list the claim but with zero value. Grossly undervaluing a claim is as much a misrepresentation of the value of the claim as omitting it entirely. *See Swanigan v Northwest Airlines, Inc.*, 718 F. Supp. 2d 917 (W.D. Tenn. 2010) (granting summary judgment to defendant where plaintiff failed to disclose claim in prior bankruptcy proceeding, made no effort to notify bankruptcy court of claim before defendant filed motion based on judicial estoppel, then amended bankruptcy filing to include claim, but misrepresented its value to be only $1,000 when plaintiff actually sought damages in excess of $1 million).

discrimination claim with EEOC only one month after her bankruptcy plan was approved); *Dickerson*, 2010 WL 8747316 at *4.

## IV. CONCLUSION

At the time that Plaintiff made her filings, under oath, with the Bankruptcy Court, she was well aware of the factual basis of the claim that she now asserts in this Court. Moreover, while her Bankruptcy Case remained open, Plaintiff valued that claim at $500,000, yet she never

Dated this the 9th day of May, 2013.

    Respectfully Submitted,

    LEITNER, WILLIAMS, DOOLEY
    & NAPOLITAN, PLLC

    By: /s/ Frank L. Day
    Frank L. Day # 25345
    80 Monroe Drive, Suite 800
    Memphis, TN 38103
    Telephone (901) 527-0214
    Email: frank.day@leitnerfirm.com
    Attorneys for Defendant
    Taco Bell of America, LLC

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 9th day of May, 2013, the foregoing document was served on **Stanley H. Less, Attorneys for Plaintiffs,** 100 N. Main Street, Suite 225, Memphis, TN 38103 unless said recipient is a registered user of this Court's ECF system and notice is provided electronically.

                                                <u>/s/ Frank L. Day</u>
                                                Frank L. Day